COREY R. AMUNDSON, Chief
JORDAN DICKSON, Trial Attorney (CA Bar No. 324406)
ALEXANDER GOTTFRIED, Trial Attorney (NY Bar No. 5490024)
BLAKE ELLISON, Trial Attorney (TX Bar No. 24117203)
Attorneys for the United States of America
U.S. Department of Justice, Criminal Division
Public Integrity Section
1301 New York Ave. NW
Washington, D.C. 20530
Telephone: 202-597-0508
Jordan.Dickson@usdoj.gov

Case: 2:24-cr-00422
Assigned To : Sam, David
Assign. Date : 12/30/2024
Description: USA v. Kindle

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NICHOLAS KINDLE,<br><br>Defendant. | FELONY INFORMATION<br><br>VIOLATIONS:<br><br>Count I: 18 U.S.C. § 371, Conspiracy to Convert Property of Another by an Officer or Employee of the United States and Remove Property in Custody of the United States<br><br>Count II: 21 U.S.C. § 846, Conspiracy to Distribute and Possess with Intent to Distribute a Schedule I Controlled Substance |
|---|---|

The United States charges:

INTRODUCTION

At all relevant times:

1. **NICHOLAS KINDLE**, the defendant, was a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), a federal law enforcement agency responsible for investigating, disrupting, and

dismantling terrorist, transnational, and other criminal organizations, including those who engage in illegal narcotics trafficking.

2. **KINDLE** and fellow HSI Special Agent DAVID COLE were assigned to the HSI Field Office in Salt Lake City, Utah, where they were responsible for investigating illegal narcotics trafficking, among other offenses.

3. **KINDLE** and COLE used their positions as Special Agents to wrongfully obtain illegal narcotics seized by HSI and other law enforcement agencies and then sold the illegal narcotics to drug dealers, including Confidential Informant 1 (CI-1), for their own personal enrichment.

## COUNT I
18 U.S.C. § 371
(Conspiracy to Convert Property of Another by an Officer or Employee of the United States and Remove Property in Custody of the United States)

4. The allegations included in paragraphs 1–3 are realleged and incorporated by reference as if set forth fully herein.

5. Between in or about 2021 and in or about December 2024, in the District of Utah and elsewhere,

**NICHOLAS KINDLE,**

defendant herein, knowingly and willfully conspired and agreed with DAVID COLE and others known and unknown, to commit the following offenses against the United States:

a. Being officers and employees of the United States and any department and agency thereof, that is, the U.S. Department of Homeland Security and HSI, embezzle and wrongfully convert to their own use the money and property of another worth more than $1,000, which came into their possession and

    under their control in the execution of their office and employment, and under color and claim of authority as an officer and employee of the United States and any department and agency thereof, in violation of Title 18, United States Code, Section 654; and

  b. After a search for and seizure of property by a person authorized to make such search and seizure, knowingly waste, dispose of, transfer, and otherwise take any action, for the purpose of preventing and impairing the Government's lawful authority to take such property into its custody and control and to continue holding such property under its lawful custody and control, in violation of Title 18, United States Code, Section 2232(a).

## PURPOSES OF THE CONSPIRACY

6. It was a purpose of the conspiracy for COLE and **KINDLE** to enrich themselves through illegal drug sales and through theft of HSI evidence.

7. It was a purpose of the conspiracy for COLE and **KINDLE** to conceal their unlawful activities through, among other things, the use of an encrypted messaging application, lying to HSI personnel and other law enforcement officials, utilizing countersurveillance methods to avoid detection, and not documenting their meetings or communications with CI-1 and others to whom COLE and **KINDLE** sold illegal drugs.

## MANNER AND MEANS

8. The manner and means of the conspiracy included, but were not limited to, the following:

  a. COLE and **KINDLE** used their status as HSI Special Agents to acquire illegal drugs, namely alpha- pyrrolidinohexanophenone (a/k/a Alpha-PHP

or bath salts), from HSI evidence seizures and from other law enforcement personnel, including others in HSI, Customs and Border Protection officers, and state and local law enforcement, under the false pretense that COLE and **KINDLE** were going to use the bath salts for legitimate HSI investigative purposes.

b. COLE and **KINDLE** recruited CI-1 to serve as the middleman for their illegal drug sales by offering CI-1 an opportunity to share in the profits of the illegal sales.

c. COLE and **KINDLE** utilized Signal, an encrypted messaging application, to communicate with each other and CI-1 about their illegal drug sales in an effort to conceal their conduct.

d. COLE and **KINDLE** employed methods like "dead drops," obfuscating the illegal drugs in chip bags and other containers, and not documenting their meetings or communications with CI-1 and others to attempt to avoid detection by law enforcement.

e. COLE and **KINDLE** stored some of their illicitly gained proceeds in safety deposit boxes owned by a company that COLE and **KINDLE** knew did not require identification or signature to purchase access to a safety deposit box.

## OVERT ACTS

9. In furtherance of the conspiracy, and to accomplish its purpose, the defendant,

**NICHOLAS KINDLE,**

COLE, and others known and unknown, committed, and caused to be committed, in the District of Utah, the following overt acts:

### The Initiation of the Scheme

10. Beginning in or about 2021, COLE and **KINDLE** began acquiring alpha-pyrrolidinohexanophenone (a/k/a Alpha-PHP or bath salts) for the purpose of illegally selling those bath salts in the District of Utah for the purpose of enriching themselves by illegal means.

11. COLE and **KINDLE** acquired these drugs using various ruses, including stealing the drugs from HSI evidence and by falsely telling other law enforcement personnel that COLE and **KINDLE** needed bath salts to conduct legitimate HSI investigative work.

12. From in or about 2022 until in or about the beginning of 2024, COLE and **KINDLE** sold bath salts sporadically to an HSI Source of Information for thousands of dollars. In violation of their duties as HSI Special Agents, COLE and **KINDLE** permitted this source of information to use the bath salts and to resell the bath salts on the street and keep the profit. COLE and **KINDLE** did not investigate or arrest those to whom the source of information sold the bath salts.

### The Use of CI-1 to Further the Illegal Schemes

13. Beginning in or about March or April 2024, COLE recruited CI-1 to serve as a new buyer for COLE's and **KINDLE's** illegal bath salts.

14. From in or about March or April 2024 until in or about October 2024, COLE and **KINDLE** sold CI-1 approximately twenty-five grams of bath salts at least once a week. COLE and **KINDLE** charged CI-1 approximately $5,000 for the twenty-five grams of bath salts during each illegal transaction.

15. COLE and **KINDLE** used Signal, an encrypted messaging application, to communicate with CI-1 about the details of where and when to meet CI-1 to conduct the illegal drug transactions.

16. COLE and KINDLE conspired together to arrange and conduct each drug transaction with CI-1, regardless of who conducted the actual transaction with CI-1.

Recorded Drug Buy No. 1 – October 30, 2024

17. On or about October 30, 2024, **KINDLE** contacted CI-1 via Signal and provided CI-1 with details about when and where to meet to conduct an illegal drug transaction to take place that same day.

18. **KINDLE** and CI-1 met at the prearranged location, located within the District of Utah. KINDLE invited CI-1 to sit inside **KINDLE's** car to conduct the transaction.

19. **KINDLE** sold CI-1 approximately twenty-five grams of alpha-pyrrolidinohexanophenone (a/k/a Alpha-PHP or bath salts) for $5,000.

20. **KINDLE** had hidden the illegal drugs inside a Styrofoam cup. Once CI-1 provided the $5,000 to **KINDLE**, **KINDLE** indicated that CI-1 should take the Styrofoam cup with the illegal drugs inside.

Recorded Drug Buy No. 2 – November 6, 2024

21. On or about November 4, 2024, COLE contacted CI-1 via Signal and provided CI-1 with details about when and where to meet to conduct an illegal drug transaction on November 6, 2024.

22. On or about November 6, 2024, COLE and CI-1 met at the prearranged location, located within the District of Utah. COLE invited CI-1 to sit inside COLE's vehicle to conduct the transaction.

23. COLE sold CI-1 approximately twenty-five grams of alpha-pyrrolidinohexanophenone for $5,000.

### Recorded Drug Buy No. 3 – November 11, 2024

24. On or about November 9, 2024, COLE contacted CI-1 via Signal and provided CI-1 with details about when and where to meet to conduct an illegal drug transaction on November 11, 2024.

25. On or about November 11, 2024, COLE and CI-1 met at the prearranged location, located within the District of Utah. COLE invited CI-1 to sit inside COLE's vehicle to conduct the transaction.

26. COLE sold CI-1 approximately twenty-five grams of alpha-pyrrolidinohexanophenone for $5,000.

27. COLE also provided CI-1 with approximately ten grams of another white substance ("Substance 2") free of charge.

28. COLE instructed CI-1 to test whether Substance 2 was viable to sell in the illegal drug market.

### Recorded Drug Buy No. 4 – November 14, 2024

29. On or about November 13, 2024, COLE contacted CI-1 via Signal and provided CI-1 with details about when and where to meet to conduct an illegal drug transaction on November 14, 2024.

30. Using Signal, COLE inquired about the quality of Substance 2. After CI-1 told COLE that Substance 2 was "ok," COLE asked CI-1 how much of Substance 2 CI-1 wanted. CI-1 informed COLE he would take twenty-five grams of Substance 2.

31. On or about November 14, 2024, KINDLE drove to COLE's residence and dropped off a dark-colored bag which contained approximately twenty-five grams of illegal bath salts and twenty-five grams of Substance 2.

32. Later that same day, COLE drove to a restaurant located within the District of Utah and informed CI-1 via Signal where to meet inside the restaurant.

33. Upon meeting, COLE sold CI-1 approximately twenty-five grams of alpha-pyrrolidinohexanophenone for $5,000.

34. COLE also provided CI-1 with twenty-five grams of Substance 2 free of charge.

<u>Recorded Drug Buy No. 5 – November 18, 2024</u>

35. On or about November 17, 2024, **KINDLE** contacted CI-1 via Signal and provided CI-1 with details about when and where to meet to conduct an illegal drug transaction the next day, November 18, 2024.

36. On or about November 18, 2024, **KINDLE** and CI-1 met at the prearranged location, located within the District of Utah. **KINDLE** invited CI-1 to sit inside **KINDLE's** vehicle to conduct the transaction.

37. Once inside the vehicle, **KINDLE** sold CI-1 approximately twenty-five grams of alpha- pyrrolidinohexanophenone and twenty-five grams of Substance 2 for $7,500.

<u>Recorded Drug Buy No. 6 – November 21, 2024</u>

38. On or about November 20, 2024, **KINDLE** contacted CI-1 via Signal and provided CI-1 with details about when and where to meet to conduct an illegal drug transaction the next day, November 21, 2024.

39. On or about November 21, 2024, **KINDLE** and CI-1 met at the prearranged location, located within the District of Utah.

40. **KINDLE** and CI-1 walked together in the parking lot of the prearranged meeting location. During the walk, **KINDLE** inquired about the quality of Substance 2 by saying, in sum and substance, "the new…it's good?"

41. In response, CI-1 advised **KINDLE** that "people love it…it goes almost just as fast." **KINDLE** replied, in sum and substance, "that's good, man."

42. **KINDLE** then advised CI-1 that he and COLE were running low on the original bath salts, remarking in sum and substance, "the original…not really running into it…I have to check…we have a little bit."

43. **KINDLE** then described where CI-1 could recover the illegal drugs **KINDLE** had brought with him by saying, in sum and substance, "so I put it in a trash can…in a Chick-Fil-A Styrofoam cup…one black glove has like three little baggies in there…that's the real, the original…the other one's the big old rocky shit."

44. **KINDLE** then described the location of the trash can to CI-1 by saying, in sum and substance, "like in the middle of the parking lot, kind of…by that tree with the orange leaves…I don't think there's anything else in there."

45. **KINDLE** then advised CI-1 how to avoid detection when he went to retrieve the drugs by saying, in sum and substance, "yeah, so it's under that…orange leaves…but, I would go say go grab a drink somewhere…and drive around."

46. **KINDLE** and CI-1 then entered **KINDLE's** vehicle. **KINDLE** opened the center console of his vehicle. CI-1 placed $7,500 of cash into the center console and exited the vehicle.

47. CI-1 retrieved the illegal drugs contained in the Chick-Fil-A cup hidden in a trash can as indicated by **KINDLE**.

<u>Recorded Drug Buy No. 7 – November 25, 2024</u>

48. On or about November 24, 2024, COLE contacted CI-1 via Signal and provided CI-1 with details about when and where to meet to conduct an illegal drug transaction the next day, November 25, 2024.

49. On or about November 25, 2024, COLE drove to a restaurant located within the District of Utah and met with CI-1.

50. COLE sold CI-1 approximately twenty-five grams of alpha-pyrrolidinohexanophenone and twenty-five grams of Substance 2 for $7,500.

<p style="text-align:center;">Recorded Drug Buy No. 8 – December 2, 2024</p>

51. On or about November 30, 2024, COLE contacted CI-1 via Signal and provided CI-1 with details about when and where to meet to conduct an illegal drug transaction on December 2, 2024.

52. On or about December 2, 2024, COLE and CI-1 met at the prearranged location within the District of Utah.

53. On or about December 2, 2024, **KINDLE** was surveilling the area where COLE and CI-1 had agreed to meet for the purpose of ensuring that law enforcement was not present during the illegal drug transaction.

54. COLE sold CI-1 approximately twenty-five grams of alpha-pyrrolidinohexanophenone and twenty-five grams of Substance 2 for $7,500.

55. During the illegal drug transaction, COLE advised CI-1 of a dead drop location where CI-1 could retrieve the illegal drugs.

56. CI-1 retrieved the illegal drugs from the dead drop location and left the meeting location.

57. **KINDLE** followed CI-1 as CI-1 left the meeting location.

58. Later that same day, COLE contacted CI-1 and requested to meet with CI-1 at a new location within the District of Utah. CI-1 agreed.

59. When CI-1 arrived at the prearranged meeting location, COLE advised CI-1 that CI-1 had only retrieved one of the two packages from the dead drop location. COLE instructed CI-1 where to retrieve the second package. CI-1 retrieved the package and left the location.

### Summary of Illegal Drug Transactions

60. Between in or about April 2024 and in or about December 2024, COLE and **KINDLE** distributed and possessed with intent to distribute at least 1,097 grams of bath salts.

61. COLE and **KINDLE** profited at least $195,000 through their illegal drug sales to CI-1. COLE and **KINDLE** also profited from their illegal drug sales to the aforementioned HSI Source of Information.

62. In furtherance of their conspiracy, **KINDLE** used and maintained his personal residence, in part, for the purpose of distributing bath salts.

### Theft of HSI Evidence

63. Between in or about 2021 and in or about 2024, on at least three occasions, COLE and **KINDLE** stole evidence that was meant to be seized by HSI as part of legitimate HSI investigations. This theft included thousands of dollars in cash, a diamond ring, and a Peruvian antiquity.

All in violation of Title 18, United States Code, Section 371.

**COUNT II**
21 U.S.C. § 846
(Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance)

64. The allegations included in paragraphs 1–63 are realleged and incorporated by reference as if set forth fully herein.

65. Between in or about 2022 and in or about December 2024, in the District of Utah,

**NICHOLAS KINDLE,**

11

defendant herein, knowingly and intentionally combined and conspired with COLE, and others, to distribute and possess with intent to distribute alpha-pyrrolidinohexanophenone (a/k/a Alpha-PHP or "bath salts"), a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

All in violation of Title 21, United States Code, Section 846.

## NOTICE OF INTENT TO SEEK FORFEITURE

Pursuant to 21 U.S.C. § 853(a), upon conviction of an offense in violation of 21 U.S.C. § 846, as set forth in this Information, the defendant shall forfeit to the United States any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offense and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the offense. The property to be forfeited includes, but is not limited to the following:

Money Judgment

    a.    The proceeds the defendant obtained, directly or indirectly, as the result of the offense, in the form of a money judgment of at least $195,000, as permitted under Rule 32.2 of the Federal Rules of Criminal Procedure.

Specific Property (the recognized value of which will be credited to the above-listed money judgment)

    b.    $34,330 in U.S. currency (seized from 4531 W. South Jordan Parkway, South Jordan, Utah on December 4, 2024).

    c.    $523 in U.S. currency (seized from the defendant's person at 2975 S. Decker Lake Drive, West Valley City, Utah on December 4, 2024).

    d.    $67,000 in U.S. currency (seized from safe deposit box B1348 at Safe Haven Private Vaults in South Jordan, Utah on December 5, 2024).

    e.    One gold Krugerrand (seized from 4531 W. South Jordan Parkway, South Jordan, Utah on December 6, 2024).

    f.    Approximately $600 worth of gift cards (seized from 4531 W. South Jordan Parkway, South Jordan, Utah on December 12, 2024).

Pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1), if any of the property described above, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United

States intends to seek forfeiture of any other property of the defendant up to the value of the property detailed as subject to forfeiture. This property includes the following:

    g.    One diamond ring (seized from 4531 W. South Jordan Parkway, South Jordan, Utah on December 6, 2024)

Dated: December 30, 2024.

    COREY R. AMUNDSON
    Chief, Public Integrity Section
    U.S. Department of Justice

    _____
    JORDAN DICKSON
    Trial Attorney